**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 10-cv-60029-GOLD/McALILEY**

T-MOBILE SOUTH LLC,

      Plaintiff,

v.

THE CITY OF MARGATE,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT; CLOSING CASE

THIS CAUSE comes before the Court on Plaintiff T-Mobile South LLC's ("T-Mobile") Motion for Summary Judgment (the "Motion"). [ECF No. 23]. The Defendant, the City of Margate ("the City"), has filed an Opposition to the Motion [ECF No. 33], and T-Mobile filed a Reply in support of its Motion. [ECF No. 37]. Oral argument was held on the Motion on March 18, 2011. For the reasons set forth below, I grant T-Mobile's Motion.

### I.    FACTUAL BACKGROUND

Having reviewed the Parties' statements of facts filed in connection with their memoranda of law and the evidentiary materials submitted by both Parties, the following facts are not in dispute. [1]

---

[1] In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed material facts. S.D. Fla. L.R. 7.5. The opposing party may file a concise statement of material facts as to which there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's motion, which are supported by evidence in the record, are deemed admitted unless controverted by the non-moving party. *Id.* In this case T-Mobile submitted a Statement of Material Facts Not in Dispute [ECF No. 25], and the City submitted a Statement of

T-Mobile is a national provider of digital wireless voice, messaging, and data services. [ECF No. 25 ¶ 12]. A significant gap exists in T-Mobile's wireless coverage in the City of Margate, Florida and adjacent areas. [*Id.* ¶ 19; ECF No. 33, p. 2 n.4]. Because of this gap in coverage, people trying to place cellular phone calls in this area experience blocked calls, dropped calls, busy signals, or no service to initiate or receive voice or data transmissions. [ECF No. 25 ¶ 20]. To resolve this problem, T-Mobile's engineers determined that installation of a new wireless communication facility ("WCF") was necessary to fill the coverage gap. [*Id.* ¶ 22].

In 2006, after conducting a formal search for a location for the WCF, T-Mobile proposed the site of Centennial Park, a City-owned property in Margate. [*Id.* ¶ 24]. The City Commissioners rejected this site. [*Id.* ¶ 25; ECF No. 4 ¶ 65]. Following the rejection, T-Mobile worked together with the City Planning Department and the City's independent consultant, CityScape, to research other potential locations that would meet T-Mobile's coverage objectives and the requirements of the City's Telecommunications Ordinance. [ECF No. 25 ¶ 26]. As a result of this collaborative effort, T-Mobile proposed the Oriole Golf Course, which is also located in the City of Margate, and T-Mobile entered into a lease agreement with the owners of the property. [*Id.* ¶¶ 28, 30].

The proposed site is located on private property zoned "S-1 Recreation District" by the City. [*Id.* ¶ 31]. Under the City's Telecommunications Ordinance,

Material Facts in Opposition to Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment. [ECF No. 32]. T-Mobile did not file an additional Statement of Material Facts with its Reply.

a conditional use permit is therefore required.   [*Id.*].   The approval process requires City Planning Department Staff review, a hearing before the Development Review Committee (the "DRC"), and a final hearing by the City Commissioners.   [*Id.* ¶ 32].   On November 25, 2008, T-Mobile submitted its application (the "Application") to the City Staff and the DRC.   [*Id.* ¶ 33].   The Application included plans, technical drawings, and photographs of the proposed 100-foot flagpole structure with hidden antennas.   [*Id.* ¶¶ 34–35]. T-Mobile's Application and supporting materials satisfied all requirements necessary for obtaining conditional use approval. [ECF No. 1 ¶ 42; ECF No. 4 ¶ 42].

On January 15, 2009, the City's consultant, CityScape, submitted an independent report, finding that T-Mobile's proposal met all of the City's requirements and recommending approval with certain conditions.   [ECF No. 25 ¶ 44–45].[2]   T-Mobile agreed to comply with and implement each of the conditions.   [*Id.* ¶ 49].   On February 19, 2009, the DRC approved T-Mobile's Application, and the matter went to the City Commission for a final hearing and vote.   [ECF No. 1 ¶ 53].   On December 2, 2009, CityScape submitted a "Supplemental Report" to the City reiterating its recommendation of approval. [ECF No. 25 ¶ 52].

A final hearing was held before the City Commissioners on December 9, 2009 (the "December 9 Hearing").   [*Id.* ¶ 54].   Among other things, the following testimony was heard at the hearing.   City Planner, Ben Ziskal, testified that the

---

[2] The three conditions were (1) the Application had to include an "as built" structural design and certification by a Registered Florida Professional Engineer, (2) the ground compound size had to be increased to support up to a total of three service providers, and (3) the flag had to be maintained in a reasonable condition and be properly lighted.   [ECF No. 26, p. 5].

"[s]taff recommends approval based on the Zoning Code." [ECF No. 26-1, p. 7:22–23]. Richard Edwards of CityScape Consultants testified that "we've come to the opinion [that T-Mobile has] met all the criteria. They have met the conditions of the City of Margate Ordinance, and it's up now to the City Counsel as to the resolution of this." [*Id.* at 11:23–24]. Likewise, the City Attorney testified that "we have no grounds to turn this down." [*Id.* at 15:9–10]. Following the hearing, the City Commissioners voted unanimously to deny T-Mobile's application. [ECF No. 25 ¶ 72]. They formally notified T-Mobile of their collective decision by adopting Resolution No. 11-591, which stated, without further elaboration, that "the City Commission of the City of Margate, Florida, hereby denies a conditional use to develop a telecommunications site at Oriole Golf Course located at 8000 Margate Boulevard (T-Mobile, Petitioner)." [ECF No. 28-2].

On January 8, 2009, T-Mobile brought this action requesting declaratory relief that the City's denial of the Application violates the Federal Telecommunications Act ("TCA"), 47 U.S.C. § 332. T-Mobile also seeks an injunction compelling the City to approve the Application and to issue all the necessary authorizations and permits required for T-Mobile to construct and maintain the proposed tower facility. [ECF No. 1 ¶ 70].[3] T-Mobile now moves for summary judgment on all of the claims set forth in its Complaint. [ECF No. 24].

---

[3] In the Complaint, T-Mobile also requested reasonable costs and expenses. [ECF No. 1 ¶ 70].

## II.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiff is entitled to have its Complaint heard and decided on an expedited basis pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## III.   LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *See id.* ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). A court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). A factual dispute is genuine

only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). In assessing whether the movant has met its burden, a court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney,* 247 F.3d at 1181.

The Parties agree that the TCA provides the substantive law governing this dispute. The relevant provisions of that statute provide that a "State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services" and that any State or local governmental decision "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by *substantial evidence contained in a written record.*" 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). The Eleventh Circuit has noted that the term *substantial evidence* is a "legal term of art." The court has put forth the following standard regarding this term of art:

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Although the substantial evidence standard is not as stringent as the preponderance of the evidence standard, it requires courts to take a harder look than when reviewing under the arbitrary and capricious standard. Finally, to determine whether the substantial evidence standard is met, a court should view the record in its entirety, including evidence unfavorable to the state or local government's decision.
>
> A court cannot substitute its own judgment for that of the local board, but it must overturn the board's decision if the decision is not supported by substantial evidence.
>
> *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1218 (11th Cir. 2002) (internal citations and quotation marks omitted).

6

Taking this legal standard as a whole, I must determine if any disputes of material fact preclude T-Mobile's request for summary judgment on the grounds that the City denied its Application without the support of "substantial evidence."

## IV. DISCUSSION

As a threshold matter, both Parties agree that there is a significant gap in T-Mobile's coverage in Margate, Florida. [ECF No. 33, p. 2 n.4]. Therefore, I will focus on the "effective prohibition" inquiry (*i.e.*, whether the City's denial of T-Mobile's application violated the TCA because it effectively prohibited the provision of personal wireless services without having the support of "substantial evidence").

### a. Circuit Split Regarding T-Mobile's Burden of Proof

The Parties disagree as to the standard governing T-Mobile's burden of proof regarding its Application. This disagreement reflects a split in authority between the U.S. Courts of Appeals, and one in which the Eleventh Circuit has not yet taken a position.

The City urges the Court to adopt the "only feasible plan" test followed by the First and Seventh Circuits. It relies primarily on *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38 (1st Cir. 2009) and asserts that T-Mobile has the burden of proving that the Oriole Golf Course was the "only feasible plan" and that "no alternative sites" would solve the problem caused by its coverage gap. [ECF No. 33, pp. 3–7].[4] On the other hand, T-Mobile urges the Court to follow

---

[4] In *Omnipoint Holdings*, the First Circuit held that the "burden is on the carrier to prove it investigated thoroughly the possibility of other viable alternatives before concluding no other feasible plan was available." *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 52 (1st

the "least intrusive means" test adopted by the Second, Third, and Ninth Circuits. T-Mobile relies primarily on *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987 (9th Cir. 2009) and asserts that it only has the burden to prove that its proposal would fill the coverage gap in the means that were "least intrusive" on the City. [ECF No. 37, p. 4].[5]  In fact, other courts that have adopted one of these tests over the other have recognized that the standards between the tests do not differ dramatically.  *E.g., City of Cranston*, 586 F.3d at 50–51 ("It is unclear how much these different articulations of the tests truly differ. . . . The underlying question is whether, under the facts of a case, a zoning decision effectively prohibited providing wireless services.").

Neither Party relies on the minority test articulated by the Fourth Circuit. *See 360 Degrees Commc'n Co. of Charlottesville v. Bd. of Supervisors of Ablemarle County*, 211 F.3d 79, 88 (4th Cir. 2000) (holding that provider has burden of demonstrating that "denial of its application for the one particular site is tantamount to a prohibition of service" and that "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try") (internal quotation

---

Cir. 2009) (citations and quotation marks omitted).  As noted above, the Seventh Circuit also follows this test.  *See VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 834–35 (7th Cir. 2003) ("We agree with the First Circuit's formulation of the statutory requirement and hold that, so long as the service provider has not investigated thoroughly the possibility of other viable alternatives, the denial of an individual permit does not prohibit or have the effect of prohibiting the provision of personal wireless services.") (internal quotation marks omitted).

[5] In *City of Anacortes*, the Ninth Circuit held that a provider must make a "prima facie showing of effective prohibition by submitting a comprehensive application, which includes consideration of alternatives, showing that the proposed WCF is the least intrusive means of filing a significant gap." *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 998 (9th Cir. 2009).  As noted above, the Second and Third Circuits also follow this test.  *See Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown Township*, 331 F.3d 386, 398 (3d Cir. 2003) ("[T]he provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve.") (citation and internal quotation marks omitted); *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999) (same).

8

marks omitted).[6]  As such, I will not consider its application to the facts of this case.

Given that the Eleventh Circuit has not yet expressly adopted any of these tests, I look to Eleventh Circuit case law for any indications as to the court's tendencies in disputes concerning land regulations and local governments.  In the context of cases involving the TCA, the court has indicated that it may be likely to adopt a relaxed version of the "no alternative plan" test.  In *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757 (11th Cir. 2005), the court acknowledged that one relevant factor in determining if a provider had met its burden under § 332(c)(7)(B)(i)(II) was "whether the company can *reasonably place a cell site in an alternative location* and eliminate the residents' concerns."  *Id.* at 762 (emphasis added).  It appears from this passage that the Eleventh Circuit would require a provider to demonstrate that it had no alternative locations for a service tower *within reason* or which could be considered *reasonable* alternatives.

Looking to Eleventh Circuit case law from different but analogous contexts also indicates that the court would probably adopt a more lenient test than the "no alternatives" test advocated by the City.   For example, the court's interpretation of the Religious Land Use and Institutionalized Persons Act

---

[6] During oral argument on this Motion, counsel for the Plaintiff also recognized that the Fourth Circuit test is an outlier.  Hr'g Tr. (Mar. 18, 2011) 12:10–16 ("[T]he Fourth Circuit has adopted a very extreme test that says you can only satisfy this section of the code if there is a blanket ban, in other words they have said only if the city adopts a blanket ban on wireless.  That standard has been rejected by every other Circuit Court.  It is clearly an outlier that is highly inconsistent with the purposes of the act.").

("RLUIPA"), 42 U.S.C. § 2000cc, is instructive.[7] Like the TCA, the RLUIPA permits federal courts to review local governmental decisions relating to land-use matters by providing religious individuals and institutions with a federal cause of action if their local governments "substantially burden" their exercise of religion. The Eleventh Circuit has interpreted the phrase *substantial burden* in that context as meaning "more than an inconvenience on religious exercise" and "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F. 3d 1214, 1227 (11th Cir. 2004). The court has also held that State and local government ordinances, which may substantially burden the exercise of religion, are subject to strict scrutiny judicial review. *Id.* at 1231; *see also Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1326 (11th Cir. 2005) (same).

Although the Eleventh Circuit's considerations in RLUIPA cases are clearly distinct from those at hand in TCA cases, the reasoning provided in RLUIPA cases sheds valuable light on the court's analytical guideposts in such land-use cases. For example, in *Midrash Sephardi*, the court looked for guidance to the "jurisprudential foundations" of the statute, the "core policy" behind the statute, and the net result of the local government's action under consideration. *See Midrash Sephardi*, 366 F. 3d at 1231, 1242–43 (examining the "jurisprudential foundations" of RLUIPA under U.S. Supreme Court case law, noting that the "core policy" of the statute was to protect the free exercise of religion, and determining that states should be "free to eliminate discrimination in

---

[7] The Parties discussed the analogous nature of this statute during oral argument. Hr'g Tr. (Mar. 18, 2011) 16:16–19:10.

any way they choose, *so long as the discrimination is actually eliminated*")
(emphasis added).

Applying this same analysis to the TCA, the jurisprudential foundations of
the statute established by the U.S. Supreme Court suggest that courts should
interpret the statute while bearing in mind that Congress enacted it to promote
the "*rapid deployment* of new telecommunications technologies." *City of Rancho
Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (emphasis added). The core
policy behind the statute is the "*reduction of . . . impediments imposed by local
governments* upon the installation of facilities for wireless communications." *Id.*
And courts interpreting the TCA should permit local governments to maintain
discretion over land-use matters, as long as the net result of local governmental
action still promotes and allows cellular phone coverage in geographic areas with
significant coverage gaps. Considering these analytical guideposts taken from
the RLUIPA context, it again appears likely that the Eleventh Circuit would adopt
a test more favorable to service providers than the "no alternative" standard
advocated by the City.[8]

### b. T-Mobile Satisfies its Burden of Proof

In any event, the Eleventh Circuit's silence on specific standards under the
TCA cases is immaterial to the outcome of this dispute because I hold that T-
Mobile has met its burden even under the "only feasible plan" test put forth by the
City. In particular, the record supports T-Mobile's argument that there were no

---

[8] Although there are a number of other federal statutes such as environmental statutes, which
implicate local governmental land-use decisions, Eleventh Circuit case law concerning those
statutes provides little guidance as to the dispute concerning the TCA in this case. *See, e.g.*, 16
U.S.C. § 1451 (Coastal Zone Management Act); 30 U.S.C. § 1291(5) (Surface Mining Control and
Reclamation Act); 33 U.S.C. § 1251 (Clean Water Act); 42 U.S.C. § 7401 (Clean Air Act); 43
U.S.C. § 1331 (Outer Continental Shelf Lands Act).

alternative sites available to T-Mobile other than the Oriole Golf Course. The

City admitted as much in its Answer:

> [T-Mobile's] Application, supporting materials and presentations satisfied all requirements for obtaining conditional use approval for a telecommunications tower as those requirements are set forth in the Telecommunications Ordinance.

> The Telecommunications Ordinance requires that an applicant for a telecommunications tower must demonstrate that *no existing alternative structure can accommodate the applicant's proposed antenna. Plaintiff submitted supporting material and presentations that satisfied this requirement.*

> [ECF No. 1 ¶¶ 42–43; ECF No. 4 ¶¶ 42–43 (emphasis added)].

Faced with T-Mobile's Motion for Summary Judgment, the City now argues that

T-Mobile fails the "only feasible plan" test because Centennial Park—the site of

the previous proposal which the City already rejected—presents a "reasonable

alternative" site. [ECF No. 33, p. 5]. Referring to Centennial Park as an "obvious

. . . alternative solution," the City notes that T-Mobile failed to file a lawsuit or

otherwise seek review of the City Commissioners' rejection of that site in 2006,

and the City asserts that "[a]bandonment of its right to challenge the denial does

not free T-Mobile from conclusion that the site was appropriate." [*Id.* at 5, 7; *see*

*also* Hr'g Tr. (Mar. 18, 2011) 19:10–21:24 (counsel for the City raising this

argument again during oral argument on this motion)].

I find this argument unpersuasive for three reasons. First, the City has not

raised a dispute of material fact on this issue. There is no disagreement or

factual ambiguity regarding the chain of events concerning T-Mobile's Application

to place a cellular tower in Centennial Park. All Parties would agree that T-

Mobile submitted such an Application in 2006; the City Commissioners

considered the Application as required by the local ordinance; they rejected that Application; T-Mobile worked with City officials to find another location; and now the City asserts that T-Mobile's failure to reapply for the Centennial Park site should preclude it from obtaining permission to place a tower at the new site.[9] No jury is needed to resolve disputes concerning these facts.

Second, the City provides no case law to support its argument that a service provider should be required to reapply for permission to locate its tower on the very same plot of land that the very same decision-making body previously rejected several years before. I see no reason to require T-Mobile to take such an illogical step absent legal authority directing me to do so. In fact, case law confirms that a service provider is *not* required to obtain judicial confirmation before a proposed location may be considered "unavailable." *See, e.g., City of Cranston*, 586 F.3d at 53 (finding that it was "pure speculation" for a city to assume that a provider could obtain permission to use a country club for its permit when the country club had previously rejected the provider three times); *City of Anacortes*, 572 F.3d at 997–98 (rejecting hypothetical alternatives as too speculative).

Third, adopting the City's argument would frustrate the foundational goals and purposes for which Congress enacted the TCA in the first place. As noted above, this statute was meant to encourage the "*rapid deployment* of new telecommunications technologies" and "*reduc[e] . . . the impediments imposed by*

---

[9] There is also no dispute that when certain residents raised the idea of placing T-Mobile's tower in Centennial Park at the December 9 Hearing, the City Commissioners and the City Attorney ended that debate by noting that that location had been previously turned down by them. [ECF No. 26-1, pp. 72:22–73:6].

*local governments* upon the installation of facilities for wireless communications." *Rancho Palos Verdes*, 544 U.S. at 115 (emphasis added). Denying T-Mobile's Motion under the City's theory would promote litigation over cooperation between wireless providers and municipalities, thus *delaying* the deployment of new technologies and encouraging local governments to actually *impede* the installation of wireless facilities.

In its Opposition to T-Mobile's Motion for Summary Judgment, the City does not refer to any other locations in Margate besides Centennial Park as alternative options for a WCF. Nevertheless, it asserts that even if the Court does not accept its arguments about Centennial Park, T-Mobile has failed to carry the burden of showing that no other alternative sites exist because of certain comments made by T-Mobile representatives at the December 9 Hearing. [ECF No. 33, pp. 6–7]. Specifically, the City refers to T-Mobile's testimony that Oriole Golf Course was the "best possible location," which "would best fit all the coverage objectives," would "fit us exactly," and would be "ideally more ideal to us." [ECF No. 26-1, pp. 35:17–19, 44:15–19, 48:12–22]. It appears that the City infers from this testimony that the Oriole Golf Course could not be the *only* location available if it was the *best* or *ideal* location (presumably among other options).

The City's argument on this issue does not refer to any factual disputes requiring a trial. To the contrary, the simple fact that T-Mobile representatives used the words *best* and *ideal* to describe their proposed location during the hearing before the City Commissioners is undisputed. Interpreting this

14

undisputed fact in the light most favorable to the City and resolving all reasonable doubts in favor of the City as I must under binding case law, I find that the evidence does not preclude me from granting summary judgment in favor of T-Mobile.

Even if the words used by T-Mobile personnel to describe the Oriole Golf Course could possibly give rise to an inference that other possible locations existed, the record does not otherwise support this inference. Simply put, the factual record points to *no other locations* that could have served as reasonable alternatives to the Oriole Golf Course, and the City suggests no other locations to support its argument. Shortly before the December 9 Hearing concluded, T-Mobile reiterated its position in unequivocal terms that dispel any doubt about the existence of alternative sites by noting that "*this is the only viable solution.*" [ECF No. 26-1, p. 83:18–21 (emphasis added)]. The City's own consultant, Cityscape, confirmed the same: "[T]here is no other facility for T-Mobile to sufficiently accomplish satisfactory service, and there are no other reasonable alternative technologies to accommodate the Applicant's needs without the construction of a new facility." [ECF No. 4, p. 4]. Therefore, T-Mobile's use of the words "best" or "ideal" is not talismanic and, at most, may be disregarded as imprecise jargon or poor word choice—not as evidence that actual alternative sites existed.[10]

The Eleventh Circuit requires district courts analyzing decisions of State and local governments under the TCA to "view the record in its entirety." *Preferred Sites*, 296 F.3d at 1218. As such, I must consider the entire transcript

---

[10] In addition, T-Mobile correctly points out that a review of the transcript text surrounding the quotes referred to by the City makes it clear that T-Mobile considered numerous alternatives and that the "most ideal location" was not available. [ECF No. 37, p. 7].

from the December 9 Hearing before I ultimately arrive at a conclusion on this issue. A review of the transcript reveals that participants of the hearing did make passing references to two other locations as possible sites for a WCF. Although neither of the Parties referred to these locations in their summary judgment submissions, I will briefly address them in keeping with my obligations to consider the entire record. It is no surprise that the City did not raise the locations in its Opposition because the only possible reading of the testimony from the December 9 Hearing is that neither location presented an actual viable alternative to the Oriole Golf Course.

First, a participant at the hearing mentioned "Royal Palm and Rock Island"[11] as a potential site for a WCF. T-Mobile responded with the following: "Royal Palm and Rock Island, which is here. There's too far of a distance to cover our coverage objective. We would still have a coverage gap in this area and, therefore, we'd need another tower in the future . . . ." [ECF No. 26-1, p. 51:2–7]. Second, when someone raised Winfield Boulevard Park as a possible site for T-Mobile's WCF, a CityScape representative replied that the "only city park that would have worked was Centennial." [ECF No. 26-1, pp. 75:14–16, 78:21–22]. T-Mobile's representative also confirmed that "[Boulevard Park] would be too close to an existing site, and it would still leave the coverage objective . . . ." [ECF No. 26-1, p. 83:4–7].

Considering the entire record, including this testimony, in the light most favorable to the City, I can only conclude that the evidence supports T-Mobile's

---

[11] It is unclear from the factual record if these names refer to parks, streets, or neighborhoods of the City of Margate.

position that Oriole Golf Park was the only viable location in the City of Margate for a WCF. For all of these reasons, there is no dispute of material fact that T-Mobile satisfies the more stringent "only feasible plan" test cited by the City. If the Eleventh Circuit adopts a more relaxed version of the "only feasible plan" test as it has indicated it may do, then T-Mobile would satisfy that test as well. Finally, there is also no dispute of material fact that T-Mobile also satisfies the "least intrusive means" test cited by T-Mobile. In other words, if the Oriole Golf Course was the "only feasible plan" available to T-Mobile, then, by definition, it must have also been the plan that was "least intrusive" on the values held by the City and its Commissioners.[12]

### c.    "In Writing Requirement"

The TCA provides that any State or local governmental decision "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence *contained in a written record.*" 47 U.S.C. §332(c)(7)(B)(iii) (emphasis added). T-Mobile argues that the City's Resolution, which consisted of a one-sentence decision, must fail "on its face" because it offered no basis for the denial. [ECF No. 24, p. 15].

As the Parties recognize in their summary judgment submissions, the district courts have come to different conclusions as to what may satisfy the "in writing" requirement contained in the TCA. *See Verizon Wireless v. Bd. of County Commissioners of Sarasota County*, Case No. 06-1991, 2007 U.S. Dist. LEXIS 68090, at *2 (M.D. Fla. Sept. 14, 2007) (holding written decision

---

[12] As noted above, I decline to analyze the facts of this case under the minority test articulated by the Fourth Circuit because neither Party has suggested that test should apply to this case.

insufficient where it merely recited in a conclusory fashion that the request was inconsistent with the county's zoning regulation); *Primesite Consulting Group, Inc. v. City of Tampa*, Case No. 98-2085, 1999 WL 33743961, at \*2 (M.D. Fla. May 27, 1999) (adopting the reasoning of other courts that a written denial "need only notify the applicant of the local government's decision").

The City asserts that the Eleventh Circuit has not formally ruled on the proper scope of the written denial requirement. [ECF No. 33, p. 9].   In fact, the Eleventh Circuit has indicated in the context of TCA disputes that a court should look beyond the formal notification document to transcripts or other writings concerning a local government's decision in order to see if that government has satisfied the "in writing requirement." *See Am. Tower LP v. City of Huntsville*, 295 F.3d 1203, 1207 n.3 (11th Cir. 2002) ("No party argues that there is no written record in this case.  The BZA's hearing was transcribed (minutes were also prepared).  Nor does any party argue that the BZA's decision was not 'in writing.'  The BZA sent American Tower a letter denying their application, and the BZA's *reasons for that denial appear in the minutes and transcript of the hearing.*") (emphasis added).

The Seventh Circuit has also provided an explanation as to the underlying purposes of the "in writing" requirement:

[T]he primary purpose of the "in writing" requirement for the Telecommunications Act is to allow for meaningful judicial review of the decisions of local governments. Keeping in mind that local zoning boards typically are not populated with lawyers much less judges, we cannot expect something akin to a judicial opinion. Therefore, a decision "in writing" is adequate if it provides an explanation that allows us, in combination with the written record, to determine if the decision is supported by substantial evidence.

*Helcher v. Dearborn County*, 595 F.3d 710, 719 (7th Cir. 2010).

Given this case law indicating that a district court should look beyond the formal notification document to the remainder of the entire "written record," I decline to grant T-Mobile's Motion on the grounds that Resolution No.11-591 was, in and of itself, inadequate.[13] Instead, I will consider the contents from the December 9 Hearing transcript when deciding if the City has put forth "sufficient evidence" for its denial as required by the TCA.

### d.    "Substantial Evidence"

Looking beyond the text of the written Resolution to the transcript of the December 9 Hearing, T-Mobile argues that the City Commissioners' ultimate decision denying its Application was not supported by "substantial evidence" as required by 47 U.S.C. § 332(c)(7)(B)(iii).    T-Mobile asserts that the only opposition voiced against its Application was "purely generalized objection, with no specific evidence or support" and "unqualified, unscientific opinion of the City Commissioners and lay members of the public." [ECF No. 24, p. 13]. T-Mobile concludes that such generalized opposition may not qualify as "substantial evidence" under the TCA.

The City responds to this argument with two short paragraphs in which it outlines the definition of "substantial evidence" and notes that T-Mobile bears the initial burden of proof on this issue. [ECF No. 33, p. 8]. This response raises no disputes of material fact and offers no reasons why the Commissioners denied

---

[13] Strangely, the City asserts in the Affirmative Defenses listed in its Answer that "[t]he denial of the Conditional Use Permit does *not* satisfy the 'in writing' requirement of 47 U.S.C. § 332(c)(7)(B)(iii)." [ECF No. 4, p. 6]. I assume this concession is a typo and therefore do not address it.

the Application, much less any explanation as to why those justifications for denial should qualify as "substantial evidence" under the TCA. As T-Mobile notes, the City also incorrectly argues that T-Mobile must present "substantial evidence" whereas the TCA actually requires that relevant *State or local governmental denial decision* be supported by substantial evidence. 47 U.S.C. § 332(7)(B)(iii).

Although I could hold in T-Mobile's favor alone on the basis of the City's inadequate response on this point, I am also obligated to consider the record in its entirety when reviewing a dispute governed by § 332(c)(7)(B)(iii). Thus, I look once more to the transcript from the December 9 Hearing because the City's official written decision provides no reason for the denial. As reflected in that transcript, the City Commissioners' votes to deny the Application were not accompanied by any contemporaneous comments from the Commissioners offering reasons for their votes. [ECF No. 26-1, pp. 86:11–87:11]. Elsewhere in the transcript are certain complaints voiced by City residents against T-Mobile's Application. Some residents indicated that they opposed the plan because they preferred that T-Mobile place the new tower in its neighboring town of Coral Springs.[14] But as noted above, the City concedes that a significant coverage gap exists *in the City of Margate*, and it advances no arguments that the heart of that gap was in Coral Springs, or a neighboring town, or any place else other than Margate. Likewise, the City Attorney responded to these comments by informing

---

[14] For example, one resident commented: "You guys need to head over to Riverside Drive and in Coral Springs and the other end of Royal Palm and get your coverage over there. (Thereupon, everyone clapping.)" [ECF No. 26-1, p. 35:3–7].

the residents that Margate's ordinances prohibit using residents' preferences to place the tower in another town as a basis to deny such an application.[15]

Another city resident cited health concerns such as radiation as a reason for his opposition to the Application. [ECF No. 26-1, pp. 64:24–65:22]. Again, the City Attorney responded that the "federal courts have specifically ruled that radiation cannot be the basis for turning this down." [*Id.* at 66:2–4].[16] It does not appear that the City Commissioners were concerned with the aesthetics of the proposed WCF. When T-Mobile representatives offered to show pictures or designs of their proposed "flag pole" design, at least one City Commissioner responded: "We don't need to see it. We know what it looks like." [ECF No. 26-1, p. 24–27]. Likewise, when the City Attorney asked the City's independent consultant to comment on the proposed idea, a City Commissioner stated "No, I don't want to hear anymore." [ECF No. 26-1, pp. 71:25–72:1]. Several other aspects of the December 9 Hearing transcript provide the distinct impression that the City Commissioners denied T-Mobile's application in order to appease a

---

[15] The City Attorney commented: "My Mayor, there is nothing in our code that says that there is—there has to be a primary benefit to the City of Margate, a primary benefit to people who have served in Margate. All that there is in the code is that it says that they cannot do it on city-owned property." [ECF No. 26-1, p. 48:2–8]. Case law also provides that a denial may not be supported by justifications not based in the local ordinance. *See T-Mobile South, LLC v. Coweta County, Ga.*, Case No. 08-0449, 2009 U.S. Dist. LEXIS 17067, at *19–20 (N.D. Ga. Mar. 5, 2009) ("[T]he decision of the Board must be based on the requirements set forth in the local zoning ordinance. . . . Thus, if a local ordinance does not require a provider [to do something as part of its application], the Board cannot base its denial on the failure of the company to provide such evidence.").

[16] The TCA specifically provides that "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv); *see also Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 n.3 (2d Cir. 1999) (holding that the terms "environmental effects" and "health concerns" are interchangeable under the TCA).

crowd of local residents who had gathered to attend the hearing and oppose the Application.[17]

Eleventh Circuit case law provides certain guidelines about the types of reasons a State or local government may rely on in order to deny an application under the TCA. For example, a "blanket aesthetic objection does not constitute substantial evidence under § 332." *See Michael Linet, Inc.*, 408 F.3d at 761. But aesthetic objections "coupled with evidence of an adverse impact on property values or safety concerns can constitute substantial evidence." *Id.* Similarly, denial may be based on testimony of local realtors that the proposed cell tower would adversely impact home resale values or if the site may have a negative effect on nearby air traffic or to the safety of school children. *Id.* at 760; *City of Huntsville*, 295 F.3d at 1208–09. But "generalized objections with no articulated reasons" and "rationalizations constructed after the fact" do not constitute "sufficient evidence" under the TCA. *Preferred Sites*, 296 F.3d at 1219–20 & n.9.

This case law provides no support for local governments that deny a provider's Application on the basis of health effects or a preference to place the relevant cell tower in a neighboring town. Construing this evidence in the light most favorable to the City, I can only conclude that there are no disputes of material fact that the City did not provide sufficient evidence for its denial of T-

---

[17] The transcript is replete with at least ten references to people clapping when a resident or City Commissioner voiced any opposition to T-Mobile's Application. [*See, e.g.*, ECF No. 26-1, pp. 15:24, 24:18, 35:7, 61:13, 65:23, 66:18, 71:18–19, 77:6, 86:19, 87:12]. One resident also described what appeared to be a similar atmosphere when the City Commissioners denied T-Mobile's previous application to place a WCF in Centennial Park: "I was here when the Centennial Park thing came down. Gentlemen, the people living there at the time actually came up to me and said—asked me how they can get it defeated. I told them just bring in a crowd, and that's why it went down the tubes." [ECF No. 26-1, p. 73:17–23].

Mobile's Application, and a reasonable mind could not accept the evidence in the record as adequate to support the City's denial.

### e.   No Other Disputes of Material Fact

The City raises no disputes of material fact in its Opposition to T-Mobile's Motion for Summary Judgment.[18]  In its Statement of Material Facts, the City disputes certain assertions made by T-Mobile, but none of these disputes is material to the outcome of this Motion.  [ECF No. 32].  For example, the City asserts that there is a dispute about whether T-Mobile provided an affidavit in support of its motion as required by the City's Ordinance § 3.23.3.  [*Id.* ¶ 4].  But this does not amount to a material dispute in light of the City's admission that T-Mobile submitted everything necessary to constitute a proper Application under the relevant ordinance.  [ECF No. 1 ¶¶ 42–43; ECF No. 4 ¶¶ 42–43].  The City also notes that it never refused to lease space to T-Mobile relating to T-Mobile's earlier application for a site at Centennial Park.  [ECF No. 32 ¶ 25].  But the City acknowledges that the real material aspect relating to that Application—namely, that the City rejected the Application—is undisputed.  [*Id.*].

The City argues that there is disagreement over whether the Oriole Golf Course was the "least intrusive means" for closing T-Mobile's coverage gap. This is plainly a legal issue, not a factual issue.  The City also asserts that a dispute exists as to whether the Centennial Park site was "at all times material unavailable to T-Mobile."  But the City has put forth *no evidence whatsoever* showing when that park resurfaced as a viable option, nor did the City explain

---

[18] Nowhere in the City's Opposition are the phrases "dispute of material fact" or "material dispute of fact" to be found.

why T-Mobile should have refused to take the City Commissioners' previous denial of the Centennial Park application at face value. The City also disagrees with T-Mobile's characterization of the testimony from Margate residents who opposed the plan as "lay testimony." [*Id.* ¶ 68]. Regardless of T-Mobile's description of the testimony, the City points to no actual disputes requiring a fact finder. Instead, it relies on testimony from T-Mobile involving the words *ideal* and *best* as a basis for the City Commissioners' denial. As discussed above, that testimony is undisputed and does not provide "sufficient evidence" for the City's denial under the TCA.

Finally, the City disagrees with T-Mobile's statement that the City Planning Department, CityScape, and the City Attorney recommended approval of T-Mobile's application. [*Id.* ¶ 55]. In support of this argument, the City cites no evidence in the record and simply argues that the "transcript contained in Exhibit 5 speaks for itself." [*Id.*]. The City's failure to provide a citation for each disputed fact in its statement constitutes a violation of the Court's Order Setting Pretrial and Trial Dates. [ECF No. 8, p. 6]. Furthermore, a review of the December 9 Hearing transcript demonstrates that the City's argument is simply incorrect because that transcript contains statements from the City Planner, CityScape, and the City Attorney recommending approval of the plan. [ECF No. 26-1, pp. 7:22–23, 11:23–24, 15:9–10].

For all of these reasons, I am not precluded from entering summary judgment in favor of T-Mobile on the basis of disputed material facts.

### f.    Remedies

The Eleventh Circuit directly addressed remedies under the TCA in *Preferred Sites*, 296 F.3d at 1222 & n.13. There, the court held that a district court may enter an injunction and explicitly order the relevant State or local government to approve the application in question and issue all appropriate permits. *Id.* It also noted that remanding the case would frustrate the TCA's guarantee of expedited relief. *Id.* Because this binding precedent specifically permits all of the relief requested by T-Mobile, I grant the remedies proposed in T-Mobile's Motion for Summary Judgment.

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that

1.    T-Mobile's Motion for Summary Judgment [ECF No. 23] is **GRANTED**.

2.    The City is enjoined from denying T-Mobile relief under 47 U.S.C. § 332(c)(7)(B)(iii).

3.    The City is directed to grant the Conditional Use and issue all necessary permits and authorizations to allow T-Mobile to construct and operate the proposed facility at the Oriole Golf Course and to construct the proposed facility in accordance with the plans already on file with the City. The City shall comply with this instruction **on an expedited basis** as required by the TCA.

4.    The City shall file a short submission with the Court of five pages or less on or before **Friday, April 15, 2011**, confirming that it has complied with this Order or providing an explanation as to why it has not yet complied.

5. T-Mobile shall file a short submission with this Court of five pages or less on or before **Friday, April 15, 2011**, providing an explanation and legal citations in support of its request for costs and expenses as raised in its Complaint. [ECF No. 1 ¶ 70.C].

6. A separate judgment in favor of T-Mobile will be entered concurrently with this Order.

7. All other pending motions are **DENIED AS MOOT** and all hearings are **CANCELLED**.

8. This case is **CLOSED**.

DONE AND ORDERED in Chambers at Miami, Florida, this _4_ day of ~~March~~, 2011.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Chris M. McAliley